### *Bell *v.* Pike & a.

In an election, held for the choice of representative in congress, the respective duties of the moderator and town-clerk are prescribed by the constitution. It is the duty of the moderator to sort and count the votes given in, and make a true public declaration thereof in the meeting; and it is the duty of the town-clerk to make a true record and return of the same to the secretary of state, according to such public declaration.

In such elections, this court has no power to go behind the record and inquire which candidate, in fact, received the largest number of legal votes, nor to order the clerk to make a record of any fact other than such as he is required by the constitution to enter at large in the town-book; therefore, where it appeared that the moderator made an incorrect declaration of the votes given in, but the town-clerk made a true record and return in accordance with the declaration, it was *held*, that a writ of *mandamus* could not be granted requiring the clerk to enter upon the town-book a record of the count of the votes differing from the record of the declaration, or to change or amend his record so as to show the actual state of the vote to have been different from the public declaration, as made by the moderator.

This was a petition for a writ of *mandamus* to John F. Jones, town-clerk of Hopkinton, requiring him to amend his record and return of the votes given in for representative in congress, in said Hopkinton, at the election held on the second Tuesday of March, 1873.

The opposing candidates at said election in the second congressional district were Samuel N. Bell, of Manchester, the petitioner, and Austin

----

*See the opinion of the Justices *post*.                         Reporter.

F. Pike, of Franklin, who, having been made a party defendant to the proceeding, appeared, and moved to dismiss the petition on the ground that it showed no legal cause for granting the writ. The facts sufficiently appear in the opinion of the court.

*Geo. Y. Sawyer* and *Bell*, for the petitioner.

*Pike, pro se.*

LADD, J. The power of the court, by *mandamus*, to require the clerk of a town to amend his record so as to make it accord with the facts, upon application of any person who shows a legal right, is not to be disputed. The records are public records; and, when the rights affected by an error in them are of a public character, the writ would generally be granted, as matter of course, upon a proper case being shown, *ex debito justitiœ.* Bull. N. P. 199; ABBOTT, C. J., in *Rex v. Mayor of West Looe,* 3 B. & C. 283.; *Rex v. Grampond,* 6 T. R. 301; Tapping's Man. 288, and authorities cited.

The applicant must show a clear legal and equitable right, and that there is no other specific legal remedy for its enforcement. *Rex v. Nottingham Old Water-Works,* 6 A. & E. 355; *Rex v. Bishop of Chester,* 1 T. R. 396; *Rex v. Bristol Dock Co.,* 12 East. 429; *Rex v. Coleridge,* 1 Chitty 588; *Rex v. Archbishop of Canterbury,* 8 East. 219; *Rex v. Clear,* 4 B. & C. 899; *Rex v. Jotham,* 3 T. R. 575; *Rex v. Stafford,* 3 T. R. 651; *Rex v. The Justices of the North Riding of Yorkshire,* 2 B. & C. 286. The object of granting the writ of *mandamus* being to prevent a failure of justice, and to provide an immediate and efficacious remedy, it follows that it will not be granted, if, when granted, it would be nugatory, in accordance with the maxim, *Lex non cojet ad inutilia.*  *  *  So the court will refuse it, if it be manifest that it must be vain and fruitless, or useless, or cannot have a beneficial effect. Tapping's Man. 15; *Rex v. Bishop of London,* 1 Wils. 11; *Rex v. Bishop of Exeter,* 2 East. 462; Ld. TENTERDEN, C. J., in *Rex v. Justices of Pembrokeshire,* 2 B. & Ad. 391; *Rex v. Whitaker,* 9 B. & C. 648.

Some doubts might, perhaps, be suggested, whether the petition in this case shows such legal right in the petitioner, Mr. Bell, or, more accurately, whether it shows that such effectual relief would be afforded by the writ, as that it ought to be granted, in accordance with these well settled legal principles.

It is certain that this court has no power to determine who is legally elected,—the only authority in that regard possessed by any state officer being vested in the governor and council; and they are charged with little more than the ministerial duty of a board of canvassers, to count and declare the result of the votes, and issue a certificate of election to the person who has the largest number. The national house of representatives, like both branches of our own state legislature, is the final judge of the elections, returns, and qualifications of its members —Const. U. S., art. 1, sec. 5; and in no possible view could a judg-

ment of this court in the present proceeding assume any higher rank, with respect to the rights of the two gentlemen who claim the office, than a piece of evidence, to be used before the tribunal, which is invested with authority to decide finally on their respective claims. It is plain, therefore, that the application stands upon a footing quite different from the great mass of cases in the books where the investigation is followed by a judgment settling conclusively the rights of the parties. It is alleged, indeed, in the petition, "that the selectmen, moderator, and clerk of said town made a certificate of the facts in reference to the correction of said record in said town, and, on the 15th day of April, 1873, filed the same in the office of the secretary of state, and requested that the same be laid before the governor and counsel, when they were met, for the purpose of counting and declaring the result of the votes cast for said office ; that, on the 29th day of April, 1873, the petitioner applied to the governor and council, while in session, for the purpose of counting and declaring the votes for said office, to have said incorrect and insufficient records and returns corrected by said clerk, and for the hearing such evidence as might be offered thereon, and that the same might be corrected, and a correct record and return made, according to the facts of the case ; that the governor and council had doubts as to their duty in the premises."

This seems to suggest a practical result whereby the petitioner might profit ; but the court are aware that the doubts entertained by the governor and council, in the premises, have been so far resolved that a certificate of election has now been issued in accordance with the result shown by the records and returns here claimed to be insufficient and incorrect. The object of the writ suggested by this clause in the petition therefore fails ; and it seems quite clear that the petition shows no effectual relief which it is within the power of the court to grant, any further than a correction of the records might facilitate the proof of a fact upon which Mr. Bell may rely in another place for the purpose of showing his right to the contested seat, namely, the fact that more legal votes were actually given in for him than were declared by the moderator, and returned to the secretary of state by the town-clerk. We are not inclined, however, to place our decision on this ground, and the only object of these observations is to guard against any misconstruction of the case as an authority hereafter. At the same time, it is to be understood that we express no opinion to the effect that the right shown is legally insufficient, or that the relief sought is not of such a character as would entitle the applicant, upon a proper case, to have the writ. We have considered the case upon its merits, and our decision rests upon views of the constitutional provisions relating to the subject, which are concurred in by the whole court.

The question is raised by a motion to dismiss the petition. This is to be treated as a demurrer, in effect, whereby the allegations of the petition are admitted to be true. The case, then, is, that Mr. Bell received nine more votes in the town of Hopkinton than were declared for him by the moderator in the town-meeting, and recorded and re-

turned to the secretary of state by the town-clerk. If those votes had been recorded and returned, it would have made his whole number of votes two larger than the number returned for Mr. Pike, and in that event he, and not Mr. Pike, would have been entitled to the certificate of election. Further, these nine votes were in fact counted at the meeting, the mistake being in the declaration of the vote by the moderator.

It is not now contended but that it was the duty of the clerk to record the declaration of the moderator as made, and there is no claim that the record is in that respect defective or incorrect; but the contention is, that inasmuch as the count and declaration did not agree, and inasmuch as the count was right and the declaration wrong, it was the duty of the clerk to make a record of both; and the amendment now asked is, that the count be entered upon the books of the town along with the record of the declaration of the moderator.

The duty of the town-clerk with respect to elections of representatives in congress is created and defined by the constitution of the state; and it is very plain that he could not, by entering upon the books of the town anything he is not therein required to record, impress upon such voluntary statement the character of an official public record; the entry would still be nothing more than a private memorandum, deriving no additional force or authority from the place where it was written.

The duty of the town-clerk as thus prescribed and limited was carefully considered by the court in settling the answer to be returned to the second question of the governor and council respecting this same election a few weeks ago; and the opinion then given, to the effect that it was not their duty, under chapter 33, section 4, of the General Statutes, to do more than ascertain that the returns are correct, according to the declaration made by the proper officer in open meeting, and the record thereof made at the time, was certainly based upon and could only be supported by the further proposition, that it is nothing but the declaration of the moderator which the town-clerk is required or authorized to record and return to the secretary of state. The question comes before us now in a different shape, but it is still the same question, and, upon reëxamination, we have been unable to reach a different conclusion from the one then announced. Little, perhaps, can be added to what was then said respecting the reasons which brought us to that result.

Chapter 30 of the General Statutes relates to the election of representatives in congress. Section 4 of that chapter is as follows: " The meetings in the several towns in each district shall be warned and governed, and the returns of votes for representatives shall be made out, signed, certified, sealed, directed, transmitted, receipted for, examined, and counted at the same time and in the same manner as provided for the return of votes for senators."

The paramount law, therefore, by which town-clerks must be governed in performing their duties respecting elections of representatives

in congress, is found in art. 32 of the second part of the constitution, which prescribes their duties respecting elections of senators. The material part of that article is,—" The meetings for the choice of governor, council, and senators shall be warned by warrant from the selectmen and governed by a moderator, who shall, in the presence of the selectmen (whose duty it shall be to attend), in open meeting, receive the votes of all the inhabitants of such towns and parishes present and qualified to vote for senators; and shall in said meetings sort and count the said votes, and make a public declaration thereof, with the name of every person voted for, and the number of votes for each person; and the town-clerk shall make a fair record of the same, at large, in the town-book, and shall make out a fair attested copy thereof, to be by him sealed up and directed to the secretary of the state, with a superscription expressing the purport thereof."

Section 15 of chapter 28 of the General Statutes is nothing more than a reënactment of this constitutional provision. It is as follows : " The moderator shall, in the meeting, in the presence of the selectmen and town-clerk, sort and count the votes, and make a public declaration of the whole number of tickets given in, with the name of every person voted for, and the number of votes for each person; and the town-clerk shall make a fair record thereof at large in the books of the town."

The real question is, What is meant by the phrase " and the town-clerk shall make a fair record of the same at large in the town-book?" Do the words " of the same " refer to the sorting and counting as well as the declaration, or to the declaration only ?    I shall not contend that a conclusive answer to this question is found in the collocation and natural import of the words as used, or the grammatical construction of the sentence in which they are found.   If we were strictly confined to the words, and prohibited from considering the subject-matter,—the nature and scope of the whole provision taken together, its purpose and bearing in the scheme of government established by the constitution,— a doubt might perhaps be raised whether the intention were not to require a record of the sorting and counting as well as of the declaration, treating them as two distinct acts.

It need not be said that a construction which should lose sight of these considerations would be entirely too narrow, and very likely to defeat the purpose of the law, as well as the manifest intention of the law-maker as therein expressed. Vallet says,—" To violate the spirit of the law by pretending to respect its letter, is a fraud no less criminal than an open violation of it.   It is not less contrary to the intention of the legislature, and only shows a more artful and deliberate malice." See Potter's Dwar. St. 129.

We observe, in the first place, that the duty of sorting and counting the votes and making a public declaration thereof in the meeting is enjoined by the constitution in terms perfectly clear and cogent upon the *moderator*.   If that officer should make a declaration differing from the count, it would be a failure of his official duty; and if the act were wilful, a clear breach of his official oath.

· The injunction upon him is to declare the vote truly, according to the count ; and no provision is made for his disobedience of the mandate, such derelictions of duty being left to the remedies furnished in one way or another by the law. The moderator is thus made an important officer ; and is accordingly clothed with powers commensurate with the duties he is to perform.

If it had been the intention to invest the town-clerk with a power superior to that of the moderator,—the power of making a record which should control the record of the declaration, or that should have the effect of cancelling or suspending the force of the declaration until it might be determined by the appropriate tribunal which is right,—it is hardly to be supposed such intention would have been left in doubt ; we might fairly expect to find it expressed in language quite plain and unambiguous. No such intention appears, or is to be inferred from the language we are considering.

Again : there can be no reasonable doubt but that the intention was to provide for the making of a record which should show upon its face the actual state of the vote.

Whatever may be the specific facts the clerk is required to enter on the town-books, it would be a singular aspersion upon the common sense of the framers of the constitution to hold that they did not intend to enjoin the making of a record from which, by a mere inspection, the result of an election might be determined.

Now, if the interpretation contended for be adopted, does it not follow that no such record is made ?

Suppose, for example, it should happen at an annual town-meeting, that, in the election of town-clerk for the ensuing year, the record of the declaration of the vote, as made by the moderator, shows that A is elected, while the record of the count, which, it is assumed, the clerk is also required to enter upon the town-books, shows that B is elected. The record of the count is of just as high a character as the record of the declaration. The two do not agree. What is to be done ? The whole matter is clearly at large. The two records are inconsistent and contradictory. Both certainly cannot be true ; yet neither can be adjudged false, except upon proper proceedings before the proper tribunal.

For all the practical uses of a record, it is no record at all. It lacks the fundamental attribute of verity, without which the first and most important definition of a record is not answered. It cannot form the basis of action anywhere or for any purpose. It leaves the truth to be ascertained by an investigation of the antecedent facts upon which it purports to be based, as much as though nothing had been written. In the case supposed, what is miscalled a record shows that two men are elected to the same office, at the same time, upon the same vote, and are both entitled to enter upon the discharge of its functions simultaneously. Besides, it immediately places the moderator and town-clerk in an attitude of hostility, thus inviting disturbance and a breach o

the peace, not only between the opposing candidates and their adherents, but between two officers of the town.

Further: it might have the effect of leaving important offices vacant until an investigation could be had, whereby a mischief and detriment might happen to the republic far greater than would result from allowing them to be temporarily filled by citizens who did not in fact receive a majority of the votes. And all this may be done by a single stroke of the pen in the hand of an .officer whose duties are purely clerical and ministerial, notwithstanding the plain and sensible provision before made, that the moderator shall count and declare the state of the vote.

No reason is seen why the consequences supposed might not follow the construction contended for; and it is very obvious that the embarrassment, confusion, and disorder that would arise in a town-meeting, upon the making of such an ambiguous entry with reference to the election of a town officer, would follow it everywhere, to the annoyance and perplexity of any tribunal or board of canvassers, whose duty it becomes to consider and act upon it.

Again: the language made use of by the framers of the constitution gives no countenance to the idea that the duty of the clerk in making up the record is different when the count and declaration do not agree, from what it is when they do agree. If he is required to record the count as well as the declaration in one case, he most clearly is required to do it in the other. Now, if a uniform practice to record both, from the adoption of the constitution to the present time, were shown, that fact might doubtless be urged with considerable force in favor of the construction claimed, according to the doctrine expressed in the maxim, *Contemporanea expositio est fortissima in lege.* For, as Lord COKE says—2 Inst. 181—it is *benedicta expositio,* when our ancient authors, and our yeare bookes, together with constant experience, doe agree: but no such practice has been shown; and if, as is understood to be the case, the practice has been uniform the other way,—to record the declaration alone,—then, so far as contemporaneous construction throws any light upon the subject, it is unfavorable to the plaintiff's view.

But, admitting that the duty of the clerk, so far as regards the record, is not limited to entering in the town-book the result of the vote as publicly declared by the moderator, it becomes an important inquiry to know exactly what he must record. It is said he must record the count. But bearing in mind that the essential attribute of a record is verity, in what terms shall his duty in this respect be defined so clearly and fully as to furnish him a sure rule in the practical discharge of his official duty? It is plain he can have no personal knowledge of any count except such as he has made himself; but even if he should examine and count all the votes himself, for the purpose of revising and rectifying the work of the moderator, thus voluntarily assuming a function and undertaking a duty laid upon the moderator by the unmistakable terms of the constitution, still he may make mistakes in that operation as well as the moderator; and in case they failed to agree

upon the result, we should after all have nothing more than the count of one officer contradicted by the count of another, admitting, what is not true, that the authority of the two is equal. And even then it could not be pretended that either record would possess the quality of absolute truth, inasmuch as both may make mistakes. By making a record of the count, it cannot, therefore, be meant that it is the duty of the clerk in some way to ascertain the state of the vote with absolute mathematical certainty, and make a record of that result. The liability of all mankind to err can hardly be thus removed by constitutional provisions or legislative enactment.

But it may be said that his duty is to obtain from the moderator, or in some other way, the result of the count as finally summed up by that officer with his own assistance and that of the selectmen, and make a record of that result. This changes the formula in no respect, except by introducing one of two new elements of error and mistake. For example: he might misunderstand a verbal communication of the result made to him privately by the moderator, or he might mistake the written figures of the moderator handed him for the purpose of his record; while at the same time there would still remain the liability of mistake in the count, and we should have presented the strange anomaly of a constitutional requirement that a private communication from the moderator to the clerk shall be recorded in the town-books by the side of a contemporaneous public announcement of the same thing, which the same officer is expressly enjoined to make.

It has been argued, that where the town-clerk has knowledge that the declaration was not according to the count, he must make a record and return of the count as well as the declaration, and that in such case his return of the count is to be received and acted on as the true return, without reference to the record of the declaration. As already suggested, we think no exception like that supposed can be introduced; that the count must go upon the record in all cases or in none. We have also attempted to show the practical impossibility, or at least improbability, of obtaining a record of the count which shall with mathematical certainty show the true state of the vote. But suppose this difficulty were removed,—suppose the town-clerk should certify not only that his record is a true record of the count, but also that the votes were rightly counted,—very likely the moderator might still dispute the record of the count, and maintain that his declaration was a true declaration of the votes actually given in, and that the record of the declaration is therefore the true record. In support of this he might offer his own testimony and that of the selectmen in whose presence the count is required to be made. But evidence of this sort cannot be received against the record; and, according to the argument, it follows that the certificate of the clerk (which is no more than his written declaration) is to be taken as conclusive until the matter may be fully inquired into and set right by a tribunal which can go behind the record and examine the fact.

It may be said that no greater hardship or wrong would result from

such a course than from accepting the record of the declaration as conclusive until the whole matter can be investigated; and it has been argued, that to hold the declaration conclusive, so far as the record is concerned, is placing in the hands of the moderator a great and dangerous power, liable to abuse. This is doubtless true, to a certain extent. The method of correcting, or rather of avoiding the effect of, a wrong record would be the same, whether the record of the declaration or of the count be allowed to control; and it is possible to suppose that an unscrupulous, or even an incompetent or careless moderator, might cause considerable mischief and wrong by making a declaration at variance with the count. But nothing can be plainer than that authority must be lodged somewhere, in some officer, sufficiently ample to create a record of such character, possessing such qualities and attribu es that it may be acted upon, in the first instance, as conclusive evidence of the facts it purports to contain.

This necessity was seen and recognized by the framers of the constitution, as well as the possibility of an abuse of the power necessary to be granted for that purpose. We therefore find that, when the power was conferred upon the moderator, it was attended with a safeguard as simple, and at the same time as effectual, as human prudence and sagacity could well devise. This safeguard is, that the declaration of the vote by the moderator shall be *public*. The framers of the constitution, probably, did not look forward to a time when the people of the state should become so indifferent to their political rights and the purity of their government, that this would not be sufficient.

Before the clerk can honestly make a record of the result of a vote which differs from the public declaration of the same by the moderator, he must, of course, know that a mistake, or an intentional fraud, has been committed. A sensible, safe, and honest course for him to take, under such circumstances, would be to call attention to the fact openly and publicly, on the spot, in order that the error may be rectified in broad daylight, where it was made, in presence of the voters whose rights and interests are involved; and it is inconceivable that the intention could have been to invest him with a secret, inquisitorial power, superior to that of every other officer of the town, whereby he may, of his own mere motion, silently enter upon the records that which shall override and defeat the action of the voters as publicly announced to them in the way prescribed by law.

Incapacity and corruption are as likely to beset the town-clerk as the moderator, and it is impossible to see why the argument does not come to this: that because one officer—whose acts are required to be done openly and publicly in the face of those whose interest is generally too great to tolerate fraud or overlook mistakes—may possess the disposition, and at the same time, what is perhaps rarer still, the hardihood to do a flagrant wrong, the power shall be taken from him and confided to another against whose acts no such safeguard is interposed, and upon whose conduct no such vigilant scrutiny is directed. For, if the town-clerk may secretly, or openly, make a record which

shall control the record he is bound to make of the public declaration of the moderator, the declaration becomes a mere form, and the power of the clerk to cheat the people of their votes is only measured by his inclination. We are satisfied the constitution is not capable of a construction which might be followed by consequences so absurd and dangerous.

But, laying aside the constitutional provision of which so much has already been said, the duties of a moderator, like those of the presiding officer in any deliberative or legislative assembly, are such as call for both intelligence and integrity. From the nature and necessity of the case, a high trust must be reposed in him. In the words of Mr. Sergeant Glanville, as quoted in Cushing's Law and Practice of Legislative Assemblies, sec. 318,—"He is the mouth, indeed the servant of the rest; to steer watchfully and prudently all their weighty consultations and debates; to collect faithfully and readily the genuine sense of the assembly." This is an apt delineation of his duties in ancient times, and no less applicable now.

The town-clerk, on the other hand, is, as his name imports, a recording officer. His duty is "to make true entries, remembrances, and journals of the things done and past" in the meeting. Cushing, *qua supra*, sec. 326. When an act, resolution, or vote of the meeting is declared by the meeting itself, through its representative and mouth, the moderator, the only official duty of the clerk is to make a record of such act, resolution, or vote, as so declared.

Doubtless the moderator may make mistakes, and for this cause the record may not show the actual and absolute truth. But it is a true record, nevertheless, of what has actually transpired in the meeting, and so is true in the only sense in which a record can ever be true.

The judgment of a court may be wrong,—may be founded on an entire misapprehension of the facts, or a misapplication of the law,—yet it would be little less preposterous to hold that the clerk of the court might invalidate his record of such wrong judgment, and so invalidate the judgment itself, by entering upon the book a statement of facts known to himself, which show conclusively that it should be reversed, than to hold that a town-clerk may invalidate his record of the public declaration of the moderator by entering beside it a statement of facts which he may know, showing that the declaration was not right.

For these reasons, together with those more succintly expressed in our reply to the questions of the governor and council, we are unable to doubt that, when the town-clerk made a true record of the public declaration of the vote by the moderator, his official duty, so far as the record is concerned, was performed; that by the constitution of this state, as well as by immemorial usage in all legislative assemblies where the common law prevails, the declaration of the moderator is to be regarded as the only authentic voice of the meeting over which he presides; and that, if the clerk should undertake to thwart the will of the meeting, as thus expressed, by entering upon the town-book some

fact known to himself, which, if true, might have the effect of chang-
ing the result, he would be guilty of an usurpation of authority ; and
such entry could only be rejected as forming no part of the record he
is required by law to make. The petition

*Must be dismissed.*