Rockingham
No. 87-036

NANCY PHELPS AND RICHARD PHELPS

v.

HASKELL KINGSTON, D.M.D.

December 7, 1987

*The Legal Clinics P.A.*, of Manchester (*Stephen E. Borofsky* on the brief and orally), for the plaintiffs.

*Devine, Millimet, Stahl and Branch P.A.*, of Manchester (*George R. Moore* and *Thomas Quarles, Jr.*, on the brief, and *Mr. Quarles* orally), for the defendant.

JOHNSON, J. The plaintiffs, Nancy Phelps and her husband Richard Phelps, appeal from the Superior Court's (*Gray*, J.) dismissal of their complaint for lack of *in personam* jurisdiction over the defendant, Haskell Kingston, D.M.D. For the reasons stated below, we hold that the superior court does have *in personam* jurisdiction over the defendant, and therefore reverse and remand.

During the late winter or early spring of 1985, plaintiff Nancy Phelps, a New Hampshire resident, developed what she later found to be a cancerous parotid gland tumor at the corner of the right side of her jaw. In late March of that year, while visiting her regular dentist, Dr. James Malloy, in Portsmouth, she mentioned the then undiagnosed lump and accompanying pain in her jaw to attending staff. The receptionist, who worked both part-time for Dr. Malloy in Portsmouth and part-time for the defendant, Dr. Kingston, offered to make the plaintiff an appointment with Dr.

Kingston, who she allegedly said had experience with such problems, at his office in Eliot, Maine. The plaintiff agreed, and the receptionist arranged an appointment for April 8, 1985. On that date Nancy Phelps saw Dr. Kingston at his Eliot, Maine office. As a result of that visit, she now sues him for dental malpractice, alleging that he failed reasonably and properly to diagnose and treat her condition, failed properly to follow-up her case, and prematurely discharged her from his care. She contends that, as a result of this alleged malpractice, the cancerous tumor grew and spread. This, she says, ultimately necessitated radical surgery, which caused serious nerve damage and disfigurement to the right side of her face. It also created the danger of the cancer's terminal recurrence. In a separate but related action, the plaintiffs also sue Dr. Ira Schwartz, a Portsmouth internist who apparently lacks any contact with the State of Maine, for malpractice arising out of his examination of Nancy Phelps regarding the same jaw condition.

Dr. Kingston is a resident of South Berwick, Maine, with his sole office in Eliot, Maine. He holds a valid New Hampshire dental license and has been licensed to practice dentistry in this State since 1982. He thus continues to be subject to regulation by the board of dental examiners of New Hampshire. *See* RSA ch. 317-A. Indeed, Dr. Kingston was a New Hampshire resident from 1981 through 1983 and practiced dentistry in this State from 1981 through 1984. Of the 1350 families that he treats, approximately 100 reside in New Hampshire, as do two of his eight employees. Dr. Kingston also advertises his practice in the Yellow Pages for the Portsmouth, Exeter, Dover, Somersworth and Rochester area.

On the defendant's motion to dismiss the action against him, the trial court issued the following order dismissing the plaintiffs' complaint for lack of personal jurisdiction:

> "The Court finds that the tortious act complained of happened, if at all, in Maine and therefore RSA 510:4(I) does not apply. The fact that the Defendant has contacts with N.H. is not determinative. RSA 510:4(I) states that jurisdiction arises out of the 'acts enumerated above' and one of the 'acts enumerated above' is the commission of a 'tortious act within this state.' Non relevant contacts with N.H. are therefore insufficient to give rise to jurisdiction. The Motion to Dismiss is granted."

The plaintiffs now appeal this decision, contending that New Hampshire may exercise personal jurisdiction over the defendant consistent with RSA 510:4, I, and the United States Constitution.

In determining whether or not it may exercise *in personam* jurisdiction over a foreign defendant, a court must typically engage in a two-part inquiry. It must first determine whether the State's long-arm statute authorizes such jurisdiction. *Weld Power Industries v. C.S.I. Technologies*, 124 N.H. 121, 125, 467 A.2d 568, 570 (1983); *Tavoularis v. Womer*, 123 N.H. 423, 426, 462 A.2d 110, 112 (1983); *Cove-Craft Industries v. B. L. Armstrong Co. Ltd.*, 120 N.H. 195, 198, 412 A.2d 1028, 1030 (1980). If the long-arm statute would establish jurisdiction over the defendant, the court must further ask whether the defendant has "minimum contacts" with the State sufficient to insure that suit against him there does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted); *see Hall v. Koch*, 119 N.H. 639, 644, 406 A.2d 962, 965 (1979). The plaintiff bears the burden of demonstrating facts sufficient to establish personal jurisdiction over the defendant. *Weld Power Industries, supra* at 123, 467 A.2d at 469; *Kibby v. Anthony Industries, Inc.*, 123 N.H. 272, 274, 459 A.2d 292, 293–94 (1983). In determining whether this burden has been met, the court will take facts that the plaintiff has properly pleaded as true and will construe reasonable inferences therefrom in the manner most favorable to the plaintiff. *Weld supra; Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 610, 392 A.2d 576, 578 (1978); *Bell v. Pike*, 53 N.H. 473, 475 (1873).

RSA 510:4, I, the New Hampshire long-arm statute that confers jurisdiction over individuals, provides that:

> "Any person who is not an inhabitant of this state and who, in person or through an agent, transacts any business within this state, commits a tortious act within this state, or has the ownership, use, or possession of any real or personal property situated in this state submits himself, or his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from or growing out of the acts enumerated above."

The question whether RSA 510:4, I, provides for jurisdiction over a foreign defendant in a malpractice suit, when all examination and treatment occurred outside the State, is not one that this court has previously addressed. However, we have held that the legislature intended RSA 510:4, I, "to be construed in the broadest legal sense to encompass personal, private and commercial transactions." *Leeper v. Leeper*, 114 N.H. 294, 297, 319 A.2d 626, 628 (1974) (citations omitted). We have further held that the

legislature's purpose in enacting the statute was to provide resident plaintiffs a convenient forum in which to sue for injuries attributable to foreign defendants. *Tavoularis, supra* at 425, 462 A.2d at 112. In light of these legislative purposes, we have further construed both RSA 510:4, I, and its corporate parallel, RSA 293-A:121, to provide jurisdiction over foreign defendants to the full extent that the statutory language and due process will allow. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Tavoularis, supra* at 426, 462 A.2d at 112; *Roy v. Transairco, Inc.*, 112 N.H. 171, 176, 291 A.2d 605, 608 (1972); *Seymour v. Parke, Davis & Company*, 294 F. Supp. 1257, 1259 (D.N.H. 1969), *aff'd*, 423 F.2d 584 (1970); *Roy v. North American Newspaper Alliance, Inc.*, 106 N.H. 92, 94–95, 205 A.2d 844, 845–46 (1964).

▌ As noted above, a court's principal inquiry in determining whether the due process clause permits personal jurisdiction over a foreign defendant is whether the defendant maintains minimum contacts with the forum State. Absent such contacts, the fourteenth amendment forbids the State to exercise jurisdiction. *Williams v. Williams*, 121 N.H. 728, 732, 433 A.2d 1316, 1319 (1981); *Kulko v. California Superior Court*, 436 U.S. 84, 91–93, *reh'g denied*, 438 U.S. 908 (1978).

▌ The question whether sufficient contacts exist to warrant jurisdiction is one that can be answered only in light of the facts of the particular case:

> "Like any standard that requires a determination of 'reasonableness,' the 'minimum contacts' test of *International Shoe* is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present. We recognize that this determination is one in which few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.'"

*Kulko, supra* at 92 (quoting *Estin v. Estin*, 334 U.S. 541, 545 (1948)) (citations omitted). Nevertheless, the United States Supreme Court has frequently stated that the minimum contacts inquiry is best informed by asking whether the defendant's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Supreme Court has further elucidated this inquiry by stating that, where the litigation in question arises out of or relates to the defendant's forum contacts,

the minimum contacts requirement is satisfied provided the defendant "has 'purposefully directed' his activities at residents of the forum." *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Kenerson v. Stevenson*, 604 F. Supp. 792, 793–94 (D. Me. 1985); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). However, even where the litigation does not "arise out of or relate to" forum contacts, those contacts directed at New Hampshire citizens may satisfy due process for jurisdictional purposes provided they are substantial. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–15 (1984); *Perkins v. Benguet Mining Co.* 342 U.S. 437, 445–47 (1952).

 Whether the defendant's contacts with the forum are sufficient to support jurisdiction is the consideration most critical to the due process inquiry. However, it is not the only one which the court should take into account. Rather:

> "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' Thus courts in 'appropriate case[s]' may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.' These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required."

*Burger King, supra* at 476–77 (citations omitted). Thus, where litigation relates to the defendant's activities purposely directed at the forum State, the sufficiency of these activities or contacts reasonably to forewarn him of the possibility of suit in the forum, weighed in combination with other factors relevant to affording substantial justice, will determine whether the State may constitutionally exercise personal jurisdiction over the defendant.

 We hold that, in this case, the defendant does have sufficient forum contacts related to the litigation in question to raise in him the reasonable expectation of being haled into a New Hampshire court. First, plaintiffs' suit seeks damages from Dr. Kingston in tort. The acts allegedly constituting the tort (exami-

nation, diagnosis, treatment, failure to follow up, and early discharge) arguably occurred entirely in Maine. However, the injury or damage for which the plaintiff now seeks recovery (the growth and spread of cancer necessitating radical surgery and resulting in nerve damage, disfigurement, and risk of recurrence) apparently occurred predominantly in New Hampshire. Many courts have held that *in personam* jurisdiction over a foreign defendant in tort suits does not offend due process merely because the injury alone occurred in the forum State. Due process concerns may be satisfied provided that it was reasonably foreseeable that the consequences of the defendant's out-of-state activities would manifest themselves in the forum. *Tavoularis*, 123 N.H. at 425–27, 462 A.2d at 113–14. Moreover, this court has specifically held that: "[b]ecause the long-arm statute must be construed in its broadest legal sense to give effect to legislative intent . . . the fact that only the alleged injury occurred within the State does not preclude New Hampshire courts from subjecting a non-resident to their jurisdiction under the long-arm statute." *Id.* at 426, 462 A.2d at 112.

In examining and counseling Nancy Phelps at his Maine office before sending her home to New Hampshire, the defendant could have had no doubt that any injurious consequences of his actions would be felt in New Hampshire. Such a result of treating a New Hampshire resident is in no sense fortuitous or unexpected. While we do not hold that defendant's conduct could by itself confer jurisdiction simply because the plaintiff is a New Hampshire resident, it is nevertheless a contact relevant to the jurisdictional inquiry.

Moreover, defendant's relevant contacts with New Hampshire are not limited to the fact that it was reasonably foreseeable that the injuries allegedly resulting from his care would ultimately become apparent in this State. Dr. Kingston, who had lived and practiced in New Hampshire for approximately three years, continued to hold a valid New Hampshire dental license even after he moved to South Berwick, Maine and set up a practice in Eliot, Maine, directly across the New Hampshire border. He voluntarily placed an advertisement in the Yellow Pages, which he knew or should have known circulated in Portsmouth and the surrounding towns of New Hampshire, as well as in Eliot, Maine, as follows:

> "'ALL PHASES OF DENTISTRY'
> PRACTICED WITH GENTLENESS
> FAMILY & PREVENTIVE DENTISTRY
> COSMETIC DENTISTRY
> TMJ & MYOFACIAL PAIN DISFUNCTION

IMMEDIATE EMERGENCY CARE
DAY, EVENING AND SAT. APPTS AVAIL.
NEW PATIENTS ALWAYS WELCOME"

Presumably at least in part as a result of his advertising, his New Hampshire license, his previous New Hampshire practice, and his close proximity to the border, approximately 7 1/2% of the defendant's patients were New Hampshire residents. However, it should be made clear that Dr. Kingston's Yellow Page advertisement, by itself, would not subject him to New Hampshire jurisdiction. Rather, it is the totality of his contacts with New Hampshire that determines that he is subject to suit in New Hampshire.

The fact that Nancy Phelps happened to visit the defendant as a result of a conversation with his receptionist, as opposed to having read his paid Yellow Pages advertisement, is unimportant. The defendant, through various means, purposely sought and made himself attractive to New Hampshire residents who, in the ordinary course of their day-to-day activities, found it necessary to seek a dentist possessing particular skills. Nancy Phelps was not the resident of some remote State (with which the defendant had no related contacts) who, finding herself suddenly in need of dental services, arrived on his doorstep solely by happenstance. She was precisely the type of person whose business the defendant actively sought to obtain. In short, the effects of the alleged malpractice were felt in New Hampshire by a plaintiff of the type that defendant's forum contacts sought to attract. *See Soares v. Roberts*, 417 F. Supp. 304, 307 (D.R.I. 1976). It is therefore neither fortuitous nor in any way surprising that the defendant is now asked to appear to defend charges in New Hampshire that arise out of his treatment of Nancy Phelps, and it is entirely just that we require him to do so.

While we need not address the issue, in light of our holding above, we note in passing that, contrary to the plaintiffs' contentions, the fact that defendant's part-time receptionist suggested his name to Nancy Phelps and made her an appointment with him does not constitute a forum contact out of which this litigation arises. Plaintiffs do not allege that the defendant made patient solicitation part of his receptionist's duties. The receptionist does not appear to have been employed as an agent for this purpose, and to hold that her actions, in and of themselves, constitute contacts relevant to the due process inquiry would be to construe as purposeful an event over which the defendant apparently had no control.

In addition to the defendant's New Hampshire contacts related to this litigation, other factors support our decision that the exercise of personal jurisdiction over him comports with the "fair play and substantial justice" requirement of *International Shoe*. Particularly relevant are the short distance between the defendant's home and office and the Rockingham County Superior Court in New Hampshire, where this case would be tried, the fact that by according personal jurisdiction over the defendant in New Hampshire we enable the plaintiff to consolidate two related malpractice actions, and the fact that the State of New Hampshire has a significant interest in affording injured New Hampshire plaintiffs a forum in which to litigate the question of liability for their injuries.

Therefore, because of the significant connection among Dr. Kingston, this State, and the litigation in question, we hold that the United States Constitution and the laws of this State permit the New Hampshire courts to exercise *in personam* jurisdiction over the defendant. In view of this result, we need not address the plaintiffs' equal protection argument.

*Reversed and remanded.*

All concurred.