Robinson v. EMS and Schultz          CV-93-258-B    01/06/94

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

Daniel C. Robinson

v.                                        C.A. No. C-93-258-B

Emergency Medical Services
Associates, Inc., and Kenneth
Schultz

**O R D E R**

Defendants Emergency Medical Services Associates, Inc. ("EMSA") and Kenneth Schultz have moved to dismiss plaintiff Daniel Robinson's complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.  Alternatively, they seek to have the case transferred to a more convenient forum pursuant to 28 U.S.C. § 1404(c).  For the reasons stated below, I deny their motion.

**BACKGROUND**

EMSA has a contract with the Commonwealth of Massachusetts to provide medical services to inmates at correctional facilities throughout the Commonwealth.  When an inmate at MCI-Framingham died after receiving medical treatment from EMSA employees, the

company retained an independent insurance consulting firm, Caronia Corporation ("Caronia"), to investigate the circumstances of the inmate's death.

Caronia dispatched Daniel Robinson from its Bedford, New Hampshire office to conduct the investigation. While interviewing persons involved in the matter, Robinson discovered that the EMSA employees and correctional officers involved in the matter blamed each other for the inmate's death. Following these interviews, Robinson was contacted at his Bedford office by a representative of EMSA and instructed to take no further action on the matter unless directed to do so by the company. A few days later, Shultz, EMSA's medical director, contacted Charles Caronia, the president of Caronia, to complain about the Massachusetts investigation. Shultz placed the call to Mr. Caronia's office in Houston, Texas, from EMSA's office in Fort Lauderdale, Florida. During the call, Shultz alleged that Robinson's interviews had resulted in a disturbance severe enough to provoke complaints from both EMSA personnel and corrections department officials. In a second telephone conversation the next day, Shultz told Mr. Caronia that he had heard that Robinson had brought his wife to the interviews and that he had even permitted his wife to question witnesses. As a result of these

2

conversations, Robinson was fired two days later.

Robinson alleges that the information Shultz provided to Mr. Caronia in these two conversations was false, unprivileged and defamatory. As a result, he has sued both EMSA and Shultz for defamation, invasion of privacy, interference with an employment relationship and intentional infliction of emotional distress.

## DISCUSSION

I. Personal Jurisdiction

Defendants first contend that this court lacks personal jurisdiction. When a court's personal jurisdiction is contested, the plaintiff must demonstrate that such jurisdiction exists. Ealing Corp. v. Harrod's, Ltd., 790 F.2d 978, 979 (1st Cir. 1986) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)). Where, as in this case, the court has not conducted an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction based on specific facts alleged in the pleadings, affidavits and exhibits. Kowalski v. Doherty, Wallace, Pillsbury & Murphy, Attorneys at Law, 787 F.2d 7, 8 (1st Cir. 1986). The court then "accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law." United Elec., Radio and Mach. Workers v. 163

3

<u>Pleasant St. Corp.</u>, 987 F.2d 39, 44 (1st Cir. 1993).

A court may assert personal jurisdiction over a nonresident defendant in a diversity of citizenship case only if the plaintiff establishes both that:  (1) the forum state's long-arm statutes confer jurisdiction over the defendant; and (2) the defendant has sufficient "minimum contacts" with the forum state to ensure that the court's assertion of jurisdiction comports with the requirements of constitutional due process.  <u>Kowalski</u>, 787 F.2d at 9-10.  In the following sections, I consider both requirements seriatim.

A.    <u>New Hampshire's Long-Arm Statutes</u>

(1)  <u>Kenneth Schultz</u>

The statutory basis for asserting long-arm jurisdiction over a nonresident individual in New Hampshire is N.H. Rev. Stat. Ann. 510:4 (I), which provides in pertinent part that

> [a]ny person who is not an inhabitant of this state and who, in person or through an agent, transacts any business within this state, commits a tortious act within this state, or has the ownership, use, or possession of any real or personal property situated in this state submits himself, or his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from or growing out of the acts enumerated above.

4

This statute has been construed by the New Hampshire Supreme Court "to provide jurisdiction over foreign defendants to the full extent that the statutory language and due process will allow." Phelps v. Kingston, 130 N.H. 166, 171, 536 A.2d 740, 742 (1987). Further, a person is deemed to commit a tortious act in this state pursuant to N.H. Rev. Stat. Ann. 510:4 (I) when: (1) the injury occurs in New Hampshire; and (2) either the act causing the injury occurred here or the defendant who committed the out-of-state act that caused the injury either knew or should have known that his or her conduct would cause injury here. Hugel v. McNell, 886 F.2d 1, 3 (1st Cir. 1989), cert. denied, 494 U.S. 1079 (1990); Buckley v. Bourdon, 682 F. Supp. 95, 99 (D.N.H. 1988).

Robinson alleges that Schultz contacted Mr. Caronia and falsely informed him that Robinson: (1) had created a severe disturbance while conducting interviews in Massachusetts; and (2) had brought his wife to the interviews in question. Defendants have stipulated that Shultz knew that the Massachusetts investigation was being conducted by representatives from Caronia's Bedford office when he allegedly made these false statements. Moreover, defendants have also stipulated that Shultz received a preliminary report on the investigation from

5

Robinson before Shultz allegedly made his complaints to Mr. Caronia, a report which Robinson had submitted on behalf of Caronia's Bedford office. When these facts are viewed in the light most favorable to Robinson, they establish a prima facie case that Shultz could reasonably foresee that his conduct would interfere with Robinson's employment in New Hampshire. Accordingly, Schultz is subject to jurisdiction under New Hampshire's long-arm statute.

> (2) <u>Emergency Medical Service Associates</u>

Because EMSA is a foreign corporation, the applicable long-arm statute is N.H. Rev. Stat. Ann. 293-A:121. <u>Phelps v. Kingston</u>, 130 N.H. at 171, 536 A.2d at 742; <u>Kowalski</u>, 787 F.2d at 10. N.H. Rev. Stat. Ann. 292-A:121 provides, in pertinent part:

> If a foreign corporation makes a contract to be performed in whole or in part by either party in New Hampshire, or if the foreign corporation commits a tort in whole or in part in New Hampshire, the acts shall be deemed to be doing business in New Hampshire by the foreign corporation. . . .

As the First Circuit Court of Appeals has recognized, the tortious acts of a corporation's agent can subject the corporation to personal jurisdiction. <u>Manqual v. General Battery Corp.</u>, 710 F.2d 15, 21 (1st Cir. 1983). Because EMSA does not dispute that Schultz was a high ranking EMSA employee acting on

6

behalf of his employer when he allegedly made the statements in question, EMSA is subject to New Hampshire's long-arm statute as well.

B.    Minimum Contacts

The Due Process Clause of the Fourteenth Amendment limits a state's power to assert personal jurisdiction over nonresident defendants.  Helicopteros Nacionales De Colombia, S.A. v. Hall, 466 U.S. 408, 413-14 (1984).  Defendants are not subject to the judgments of states with whom they have had no meaningful "contacts, ties, or relations."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985).  In order for a court to assert personal jurisdiction over a nonresident defendant, the defendant must have had "certain minimum contacts with [the forum] such that the maintenance of suit does not offend traditional notions of fair play and substantial justice."  Helicopteros, 466 U.S. at 414 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  Minimum contacts are established when a defendant "purposefully directs" his or her activities to residents of the forum state.  Burger King, 471 U.S. at 476 (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774-75 (1984)).  The defendant's conduct should bear such a "'substantial connection' to the forum state" that the defendant "should reasonably

7

anticipate being haled into court there." Burger King, 471 U.S.
at 473-75 (citing World-Wide Volkswagen Corp. v. Woodson, 444
U.S. 286, 297 (1980)).

A court may exercise either general or specific jurisdiction
over a defendant.  If a defendant's activities within the forum
state are "continuous and systematic" or "substantial," the
defendant has a sufficient relationship with the forum state to
support a finding of general jurisdiction.  Helicopteros, 466
U.S. at 413-414.  If, however, a court cannot assert general
jurisdiction over the defendant, it may still assert specific
jurisdiction depending on the quality and nature of the
defendant's contacts with the forum state in connection with the
causes of action alleged in the complaint.  Id.

Robinson does not claim that either EMSA or Shultz have the
kind of substantial and systematic contacts with New Hampshire
that would support a finding of general jurisdiction.  Instead,
he contends that the court has specific jurisdiction over both
defendants because Shultz's statements, for which both defendants
are liable, were aimed at Robinson's employment interests in New
Hampshire.

The First Circuit has formulated a tripartite test for
determining whether a district court has specific jurisdiction

8

over a defendant.  See United Elec. Radio and Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992). First, the claim underlying the litigation must "directly arise out of, or relate to, the defendant's forum-state activities." Id.  Second, the defendant's in-state contacts must "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protection of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable."  Id.  Third, the exercise of jurisdiction must be reasonable in light of certain "Gestalt" factors.  Id.

Turning to the facts of this case, Robinson has responded to defendants' motion to dismiss by alleging that both Shultz and EMSA could reasonably foresee that Schultz's allegedly defamatory statements would interfere with Robinson's employment in New Hampshire.  Robinson has supported this allegation with a stipulation in which defendants admit that before Shultz made the allegedly defamatory statements: (1) he knew that the Massachusetts investigation was being conducted by representatives of Caronia's Bedford office; and (2) he had reviewed the initial report on the Massachusetts investigation that Robinson submitted on behalf of Caronia's Bedford office.

9

These facts provide ample prima facie support for Robinson's allegation. Moreover, Robinson's properly supported allegation satisfies the first two steps of the specific jurisdiction test with respect to both defendants.[1] See generally Calder v. Jones, 465 U.S. 783 (1984); Hugel, 886 F.2d at 3.

The so-called "Gestalt" factors that comprise the third part of the specific jurisdiction test are:

> [T]he plaintiff's interest in obtaining
> convenient and effective relief; the burden
> imposed upon the defendant by requiring it to
> appear; the forum's adjudicatory interest;
> the interstate judicial system's interest in
> the place of adjudication; and the common
> interest of all affected sovereigns, state
> and federal, in promoting substantive social
> policies.

Donatelli v. National Hockey League, 893 F.2d 459, 465 (1st Cir. 1990). In this case, the balancing of the Gestalt factors weighs heavily in favor of finding personal jurisdiction over the defendants. First, as a New Hampshire resident, Robinson has a strong interest in litigating the case here. Moreover, while it may be somewhat burdensome to the defendants to litigate in New

---

[1] As I have already noted, if this court has personal jurisdiction over Schultz, it also has jurisdiction over EMSA since Schultz was acting as EMSA's agent when he allegedly engaged in the conduct that gives rise to personal jurisdiction in this court.

10

Hampshire, it would also be burdensome to Robinson to require him to litigate his claims in Massachusetts. Second, this court's interest in making the most efficient use of limited judicial resources will be served by finding personal jurisdiction here since this court already has jurisdiction over the closely-related claims that Robinson has made against Caronia. Third, since defendants' acts allegedly injured Robinson's employment in New Hampshire, this state also has an interest in having the case determined here. Finally, no other forum has a greater interest in having the case decided in its jurisdiction.

In summary, Robinson has made a sufficient prima facie showing to warrant a finding of personal jurisdiction over both defendants.

II. Failure to State a Claim Upon Which Relief Can Be Granted

Defendants also argue that the complaint must be dismissed pursuant to Rule 12(b)(6) because Robinson's complaint fails to state a claim for relief. In considering this claim, I apply the following standard of review: "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson,

11

355 U.S. 41, 45-46 (1957); accord Berniger v. Meadow Green-Wildcat Corp., 945 F.2d 4, 6 (1st Cir. 1991).  In making this determination, I accept the truth of the facts alleged in the complaint and give the plaintiff the benefit of "every reasonable inference helpful to the plaintiff's cause."  Garita Hotel, Ltd. Partnership v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992).

Defendants contend the complaint should be dismissed because Shultz' statements were qualifiedly privileged.  I disagree.  The resolution of a qualified privilege claim ordinarily is a matter for summary judgment or trial.  Robinson has pleaded facts which, if proved at trial, would permit a rational fact finder to find for Robinson on each count of the complaint.  Moreover, Robinson has specifically alleged that Schultz' statements were unprivileged.  I cannot dismiss an otherwise valid complaint at this stage of the proceedings merely because defendants dispute Robinson's claim that their conduct was unprivileged. Accordingly, I decline to dismiss the complaint for failure to state a claim.[2]

_____

[2] Defendants' remaining challenges to the sufficiency of the complaint are so insubstantial that they require no discussion. It is sufficient merely to observe that I have considered them

III. <u>Transfer</u>

Defendants' final contention is that I should transfer the case to Massachusetts pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

District courts enjoy considerable discretion in deciding whether to transfer a case pursuant to section 1404(a). <u>Norwood v. Kirkpatrick</u>, 349 U.S. 29, 30 (1955); <u>Cianbro Corp. v. Curran-Lavoie, Inc.</u>, 814 F.2d 7, 11 (1st Cir. 1987); <u>Codex Corp. v. Milgo Elec. Corp.</u>, 553 F.2d 735, 737 (1st Cir.), <u>cert. denied</u>, 434 U.S. 860 (1977); <u>McFarland v. Yegen</u>, 699 F. Supp. 10, 15 (D.N.H. 1988). In exercising such discretion, judges must consider the convenience of the parties and witnesses, the relative ease of access to documents needed for evidence, and the possibility of consolidation. <u>See</u> <u>Cianbro Corp.</u>, 814 F.2d at 11; <u>Codex Corp.</u>, 553 F.2d at 737. While a plaintiff's choice of forum is an important consideration, it is not dispositive. <u>See</u>

and found them unpersuasive.

13

Norwood, 349 U.S. at 30-33; United States ex rel. La Valley v. First Nat'l Bank, 625 F. Supp. 591, 594 (D.N.H. 1985).  Despite considering the appropriate mix of factors, "there will often be no single right answer" as to where venue should lie.  Codex, 553 F.2d at 737.  However, one thing is clear: defendants seeking to transfer an action bear the "substantive burden" of showing that these factors "predominate" in favor of transfer.  Buckley v. McGraw-Hill, Inc., 762 F. Supp. 430, 439 (D.N.H. 1991); accord Crosfield Hastech, Inc. v. Harris Corp., 672 F. Supp. 580, 589 (D.N.H. 1987).

The key witnesses in this case will consist of, among others, Massachusetts Department of Corrections employees (from Massachusetts), Coronia employees (from New Hampshire and Texas), and EMSA officials (from Florida and Massachusetts).  Defendant asserts that because most witnesses will be from the Department of Corrections, transfer would serve the interests of justice and further judicial economy because fewer out-of-state subpoenas would need to be served.  While defendants' efforts to ensure judicial economy are admirable, this bald assertion alone falls far short of showing that the relevant factors "predominate" in

14

favor of transfer.[3]  Accordingly, their motion is denied.


                          **CONCLUSION**

     For the foregoing reasons, the defendants' motion to dismiss

or transfer (document no. 5) is denied.

     SO ORDERED.


                              _____
                              Paul Barbadoro
                              United States District Judge
January 6, 1994

cc:  Daniel I. Small, Esq.
     Peter S. Wright, Jr., Esq.
     Claudia C. Damon, Esq.

_____

     [3] Indeed, the Massachusetts witnesses whom defendants intend
to call presumably work at MCI Framingham, an institution located
less than 100 miles from this court.  Hence, it is reasonable to
assume that defendants will be able to subpoena witnesses from
MCI Framingham without having to invoke the jurisdiction of
another court.  <u>See</u> Fed. R. Civ. P. 45(b)(2).