Kellett v. Dolin, et al.          CV-98-681-M    05/28/99
                     UNITED STATES DISTRICT COURT

                       DISTRICT OF NEW HAMPSHIRE


H. Raymond Kellett, Jr.,
Laurel Kellett, and Heather Kellett,
      Plaintiffs

      v.                                      Civil No. 98-681-M

Thomas Dolin, Esq., Michael Whiteman, Esq.
Melvin Osterman, Esq., John Hanna, Jr.,
Individually and doing business as
Whireman, Osterman & Hanna, and
Mark F. Kellett, Individually and as
Co-Executor of the Estate of Narcissa Kellett,
      Defendants


                         **O R D E R**


      Plaintiffs, former residents of New Hampshire, are currently

domiciled in Florida.  In November of 1998, they filed a twenty

count writ against defendants in Rockingham County (New

Hampshire) Superior Court, asserting claims sounding in tort,

contract, and violations of various New Hampshire statutes.[1]

_____

      [1]     Plaintiffs also assert a claim for "violations of 42
U.S.C. § 1983."  Complaint, Count 6.  Technically speaking, of
course, no cause of action exists for "violations" of section
1983.  Rather, section 1983 provides a vehicle by which people
may seek damages for violations of their federally protected
rights.  See Graham v. Connor, 490 U.S. 386, 393-94 (1989) ("As
we have said many times, § 1983 is not itself a source of
substantive rights, but merely provides a method for vindicating
federal rights elsewhere conferred.") (citation and internal
quotation marks omitted).  More importantly, however, plaintiffs'
section 1983 claim is deficient on its face.  Among other notable
defects, the complaint nowhere alleges that defendants were state
actors, that they were acting under color of state law, or even
that they conspired with state actors when they allegedly
violated plaintiffs' civil rights.  See, e.g., Malachowski v.
City of Keene, 787 F.2d 704, 710 (1st Cir. 1986)("It is black-
letter law that a showing of interference with a
constitutionally-protected right by someone acting under color of
state law is a prerequisite to a § 1983 action.").  See

Defendants removed the action, alleging that this court has subject matter (i.e., diversity) jurisdiction under 28 U.S.C. § 1332. Defendants Dolin, Whiteman, Osterman, and Hanna, individually and doing business as Whiteman, Osterman & Hanna, both (collectively, the "Dolin defendants"), now move to dismiss plaintiffs' complaint, alleging that the court lacks personal jurisdiction over them. Plaintiffs object.

In Sawtelle v. Farrell, No. 94-392-M (D.N.H. April 4, 1995), aff'd, 70 F.3d 1381 (1st Cir. 1995), this court was presented with the following question concerning the proper exercise of personal jurisdiction: "How much contact with a foreign client's state must a lawyer have before he or she may properly be brought before the courts of that state to answer charges of professional negligence?" Sawtelle, slip op. at 1. In the present case, the court faces a factual situation in which the defendant attorneys are one step removed from those in Sawtelle. Here, the question is how much contact must an opposing parties' foreign lawyer have with the forum state in order to be subjected to the personal jurisdiction of courts within that forum? Unlike the plaintiffs in Sawtelle, plaintiffs in this case have no attorney-client relationship with the defendants and, therefore, there are no professional obligations (or personal contacts) arising out of an

generally, Blum v. Yaretsky, 457 U.S. 991 (1982) (discussing the circumstances under which a private citizen may be deemed to have acted under color of state law). Moreover, it is entirely unclear from the complaint precisely which of their federally protected right(s) plaintiffs claim were violated.

2

attorney-client relationship upon which plaintiffs might base their claim that the defendants are subject to the exercise of personal jurisdiction by courts in this forum.[2]

## Factual Background

A.    The Dolin Defendants.

Each of the individual Dolin defendants is an attorney licensed to practice in the State of New York.  Their law firm, Whiteman, Osterman & Hanna, is located in Albany, New York.  None of the Dolin defendants is licensed to practice law in New Hampshire, nor has any appeared pro hac vice before any court located in this state.  Moreover, none of the Dolin defendants owns any real or personal property located in New Hampshire. Finally, at least with regard to this case, none of the Dolin defendants represented any resident of New Hampshire nor did they provide legal services to the New Hampshire estate of Narcissa Kellett.

B.    Events Relating to the Estate of Narcissa Kellett.

---

[2]    Parenthetically, although not raised by defendants, it is unclear whether plaintiffs even have standing to raise many of the claims asserted against the Dolin defendants.  Each plaintiff appears in his or her individual capacity, as a beneficiary of the Estate of Narcissa Kellett (e.g., Raymond Kellett does not bring this action in his capacity as one of the co-executors of the estate).  And, the estate itself is not a plaintiff.  As mentioned throughout this order, it would appear that the proper parties to many of the claims raised in plaintiffs' complaint would be the co-executors (and the estate).

3

On May 18, 1996, Narcissa F. Kellett, then a resident of the State of New Hampshire, died. Her estate was probated in Rockingham County, New Hampshire. As directed by her will, defendant Mark Kellett and plaintiff Raymond Kellett were appointed joint executors of the estate. Attorney Michael Chubrich of Portsmouth, New Hampshire was appointed as attorney for the estate.

Shortly after the death of his mother, defendant Mark Kellett contacted New York Attorney Thomas Dolin, apparently seeking personal legal advice regarding his own fiduciary obligations to the estate (as one of its co-executors), and tax consequences of certain distributions he expected to receive from the estate. Dolin advised Kellett with regard to several issues, but specifically told Kellett that he was not licensed to practice law in New Hampshire. Accordingly, when it became clear that Kellett required local legal representation, he hired New Hampshire Attorney Robert Donovan. Donovan appeared and represented Kellett in the New Hampshire probate proceeding.

In connection with his own representation of Kellett, Attorney Dolin met, conversed, and corresponded with Kellett on numerous occasions. All of those contacts took place in New York and all correspondence appears to have been directed to Kellett's home in New York. Dolin did, however, have some limited contact with New Hampshire. On January 15, 1997, Dolin took part in a

4

telephone conference call, arranged by Attorney Chubrich (counsel to the estate) from Chubrich's New Hampshire office. And, according to his billing records, Attorney Dolin also had several other telephone conversations with, and directed letters to, Attorney Chubrich about matters apparently relating to his client's (i.e., Mark Kellett) obligations to the estate, potential tax consequences associated with various distributions to his client from the estate, and possible means by which to settle the on-going and increasingly acrimonious personal dispute between his client and the other co-executor of the estate, plaintiff Raymond Kellett, concerning distributions that each hoped to receive.

Additionally, while Attorney Dolin tendered bills for legal services directly to Mark Kellett, he did suggest that Kellett pass those bills along to Attorney Chubrich to determine whether Kellett might obtain reimbursement from the estate. And, at the request of Attorney Chubrich, Dolin later submitted copies of those bills directly to Chubrich, so that Chubrich might determine whether the estate could legitimately claim those expenses as a deduction on its federal tax return. Finally, as part of his representation of Kellett, Attorney Dolin took possession of certain savings bonds which were apparently assets of the estate and which had been forwarded to him (or to his client) by the estate's co-executor, plaintiff Raymond Kellett. Plaintiffs allege that, acting on the advice of Attorney Dolin,

5

Mark Kellett breached an oral contract between the parties regarding the disposition of the savings bonds and that Dolin (who retained possession of them) thereby "wrongfully converted" those assets of the estate. (The estate is not a party to this action and makes no such claim regarding its assets.)

The Dolin defendants assert that the foregoing contacts with the State of New Hampshire are insufficient to constitute "purposeful availment" and, therefore, the court may not, consistent with notions of due process and fundamental fairness, exercise personal jurisdiction over them. Plaintiffs, on the other hand, claim that the Dolin defendants had sufficient purposeful contacts with this forum to permit the court to exercise such jurisdiction over them.

## Standard of Review.

A.    Statutory and Constitutional Prerequisites.

It is well established that in a diversity case personal jurisdiction over a nonresident defendant is governed, at least in part, by the forum state's long-arm statute. See Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell, Partnership v. Medfit Int'l, Inc., 982 F.2d 686, 690 (1st Cir. 1993). And, when personal jurisdiction is contested, the plaintiff bears the burden of establishing that the court has such jurisdiction. See Sawtelle, 70 F.3d at 1387; Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 8 (1st Cir. 1986).

6

Allegations of jurisdictional facts are construed in the plaintiff's favor, see Buckley v. Bourdon, 682 F.Supp. 95, 98 (D.N.H. 1988), and, if the court proceeds based upon the written submissions of the parties without an evidentiary hearing, the plaintiff need only make a prima facie showing that jurisdiction exists. See Kowalski, 787 F.2d at 8; Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 674-75 (1st Cir. 1992). Nevertheless, the plaintiff's demonstration of personal jurisdiction must be based on specific facts set forth in the record in order to defeat a defendant's motion to dismiss. See TicketMaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). And, "in reviewing the record before it, a court 'may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment.'" VDI Technologies v. Price, 781 F.Supp. 85, 87 (D.N.H. 1991) (quoting Lex Computer & Management Corp. v. Eslinger & Pelton, P.C., 676 F.Supp. 399, 402 (D.N.H. 1987)).

Before a court may exercise personal jurisdiction over a non-resident defendant, the plaintiff must show, first, that the forum state's long-arm statute confers jurisdiction over the defendant, and second, that the exercise of jurisdiction comports with constitutional due process standards (by establishing that the defendant has sufficient "minimum contacts" with the forum state). See Kowalski, 787 F.2d at 9-10. The New Hampshire individual long-arm statute, N.H. RSA 510:4, provides

7

jurisdiction over foreign defendants "to the full extent that the statutory language and due process will allow." Phelps v. Kingston, 130 N.H. 166, 171 (1987). Likewise, New Hampshire's corporate long-arm statute, N.H. RSA 293-A:15.10, authorizes jurisdiction over foreign corporations and unregistered professional associations to the full extent permitted by federal law. See Sawtelle, 70 F.3d at 1388. Stated another way, New Hampshire's individual and corporate long-arm statutes are coextensive with the outer limits of due process protection under the federal constitution. Accordingly, the court need only determine whether the exercise of personal jurisdiction over a foreign defendant would comport with federal constitutional guarantees.

Before a court may exercise personal jurisdiction over a foreign defendant in a manner consistent with the Constitution, the plaintiff must demonstrate that the defendant has "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales De Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). And, before finding that a defendant has such "minimum contacts," the court must be satisfied that the defendant's conduct bears such a "substantial connection with the forum state" that the defendant "should reasonably anticipate being haled into court there." Burger King

8

<u>Corp. v. Rudzewicz</u>, 471 U.S. 462, 473-75 (1985) (citing <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980)).

B.    <u>General v. Specific Jurisdiction</u>.

A court may exercise either general or specific jurisdiction over a defendant. "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." <u>United Elec. Workers v. 163 Pleasant Street Corp.</u>, 960 F.2d 1080, 1088 (1st Cir. 1992). Plaintiffs do not contend that the Dolin defendants engaged in "continuous and systematic activity" in New Hampshire, nor do they ask the court to exercise general jurisdiction over them. Accordingly, if the court may properly exercise personal jurisdiction over those defendants, it must be specific jurisdiction.

A court may exercise specific jurisdiction when the cause of action arises directly out of, or relates to, the defendants' forum-based contacts. <u>United Elec. Workers</u>, 960 F.2d at 1088-89. In an effort to assist trial courts in determining whether they might properly exercise specific jurisdiction, the Court of Appeals has formulated a three-part test:

> First, the claim underlying the litigation must
> directly arise out of, or relate to, the defendant's
> forum-state contacts. Second, the defendant's in-state
> activities must represent a purposeful availment of the
> privilege of conducting activities in the forum state,

thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec. Workers, 960 F.2d at 1089. With those principles in mind, the court turns to defendants' motion to dismiss.

**Discussion**

Plaintiffs' support the exercise of specific personal jurisdiction over the Dolin defendants in a somewhat unfocused summary:

> Defendant Dolin had an attorney-client relationship with the Defendant Mark Kellett, who was the Co-Executor of a New Hampshire Estate. The subject of [the] attorney-client representation involved the actions of Mark Kellett as Co-Executor of the New Hampshire Estate, involved advice concerning the distribution of the New Hampshire Estate assets, estate taxation of same, and involved the conversion of the assets of the New Hampshire Estate. The rendering of legal advice to a Co-Executor of a New Hampshire Estate, and the rendering of bills for submission to a New Hampshire Estate and a New Hampshire Court constitute the transaction of business under R.S.A. 510:4. The representations of the Defendant Dolin were instrumental in the creation of the agreement made in New Hampshire with the purpose of causing detrimental reliance by the Plaintiff, H. Raymond Kellett, Jr., who was a New Hampshire resident, and for the purpose of causing assets of the New Hampshire Estate to be delivered outside the jurisdiction. H. Raymond Kellett, Jr., [the plaintiff] had the right to rely on the Defendant Dolin's representations as counsel and as an officer of the Court. Since the New Hampshire Estate is a New Hampshire citizen, and the damage resulting from the Defendant's conversion of Estate assets would occur in New Hampshire to the Estate and its counsel, the harm from the tortious actions [is] in New Hampshire. Further, the acquisition of the Savings Bonds as described herein, constitute[s] the possession of personal property situated in New Hampshire.

10

Plaintiffs' objection to defendants' motion to dismiss (document no. 8) at 3-4 (emphasis supplied).

A.   <u>Counsel to a Co-Executor of a New Hampshire Estate</u>.

Taking plaintiffs' assertions in turn, they first claim that by rendering legal advice to a co-executor of a New Hampshire estate, the Dolin defendants conducted business in New Hampshire or, at a minimum, purposefully availed themselves of the privileges and protections of New Hampshire law.  Plaintiffs have provided little, if any, legal support for that proposition. Instead, they rely largely on their own renditions of the equities of the case.  While plaintiffs may well believe that they have been harmed by the Dolin defendants' conduct, the mere existence of an injury felt in this forum does not support the legitimate exercise of personal jurisdiction over those defendants.  <u>Compare</u> <u>Mosier v. Kinley</u>, 142 N.H. 415 (1997) (holding that Vermont physician who treated plaintiff in Vermont was not subject to personal jurisdiction of New Hampshire courts simply because plaintiff felt the impact of alleged malpractice in New Hampshire) <u>with</u> <u>Phelps v. Kingston</u>, 130 N.H. 166 (1987) (holding that a Maine dentist, who was licensed to practice in New Hampshire, advertised in New Hampshire, and treated many New Hampshire residents in his Maine practice, was subject to the personal jurisdiction of a New Hampshire court in a malpractice action brought by one of his former patients, a New Hampshire resident).

11

Unlike the plaintiff in <u>Phelps</u>, plaintiffs in this action had no contractual or professional relationship with the Dolin defendants, the Dolin defendants are not licensed to practice law in New Hampshire, and there is nothing to suggest that they solicited any clients in New Hampshire or engaged in any advertising efforts in this state, or even practiced law in this state. The crux of plaintiffs' argument is that the Dolin defendants knew or should have known that the advice provided to their client (Mark Kellett), if acted upon, might reasonably cause injury to the plaintiffs in New Hampshire. And, say plaintiffs, by providing advice to a New York resident, knowing that he might act on that advice in New Hampshire, defendants "conducted business" in New Hampshire (and, in the process, engaged in the unauthorized practice of law).

Beyond its lack of legal support, plaintiffs' first argument has little logical appeal. By extension, plaintiffs would seem to suggest that attorneys who advise a United States citizen on a proposed business transaction in the Phillippines have "purposefully availed" themselves of the privilege of conducting business in the Phillippines once their client acts on that advice. However, just as the mere representation of a foreign client does not, standing alone, subject an attorney to the personal jurisdiction of courts within that foreign jurisdiction, <u>see, e.g.</u>, <u>Sawtelle</u>, 70 F.3d at 1394 ("The mere act of agreeing to represent (and then representing) an out-of-state client,

12

without more, does not suffice to demonstrate voluntary purposeful availment of the benefits and protections of the laws of the client's home state."), an attorney must do more than merely render legal advice to someone who plans to act on that advice in a foreign jurisdiction in order to be deemed to have conducted business in, or purposefully availed himself or herself of the benefits and protections of the laws of, that foreign jurisdiction.

As the Supreme Court has repeatedly made clear, the "purposeful availment" prong of the jurisdictional inquiry ensures that a defendant will not be haled into a foreign jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts with that forum. See Burger King Corp. v. Rudzewicz, 471 U.S. at 475. See also Gelineau v. New York University Hospital, 375 F.Supp. 661, 667 (D.N.J. 1974) ("When one seeks out services which are personal in nature, such as those rendered by attorneys, . . . and travels to the locality where he knows the services will actually be rendered, he must realize that the services are not directed to impact on any particular place, but are directed to the needy person himself. While it is true that the nature of the services is that if they are negligently done, their consequences will thereafter be felt wherever the client . . . may go, it would be fundamentally unfair to permit a suit in whatever distant jurisdiction . . .

13

the client [may carry] the consequences of the advice he received.").

Of course, plaintiffs in this case, unlike those in Mosier, Phelps, or Gelineau, had no professional relationship with defendants at all. Instead, plaintiffs' first argument suggests that the Dolin defendants are subject to this court's exercise of personal jurisdiction largely as a result of the conduct of their client, Mark Kellett (who allegedly caused harm to plaintiffs by acting upon advice rendered by the Dolin defendants).

Despite the fact that they bear the burden of establishing the court's personal jurisdiction over the Dolin defendants, plaintiffs have directed the court to no statute or relevant precedent suggesting that merely providing out-of-state personal legal advice to a co-executor of a New Hampshire estate constitutes sufficient contact with this forum to warrant the exercise of specific personal jurisdiction. Nor have they demonstrated that, by rendering advice to a New York citizen in New York, with the knowledge that he might act on some of that advice in New Hampshire, defendants have somehow engaged in the unauthorized practice of law in New Hampshire, or otherwise conducted business in New Hampshire.

B.     Defendants' Billing Practices.

As to plaintiffs' assertion that the Dolin defendants billed the New Hampshire estate for legal services, the record before the court suggests that plaintiffs are mistaken.  The Dolin defendants' client was Mark Kellett, not the estate (which was represented by Attorney Chubrich).  Their contractual relationship with Kellett was entered into in New York and, absent an agreement to the contrary, is presumably governed by New York law.  And, all of their conduct related to representing Kellett occurred in New York.

Importantly, the Dolin defendants had no contractual relationship with the estate and the estate was under no obligation to compensate them for any legal services provided to Kellett.  Accordingly, the Dolin defendants submitted their legal bills to Kellett for payment by Kellett.  See, e.g., Letter of Attorney Dolin to Mark Kellett dated November 25, 1996 ("Enclosed is a current statement for our services in connection with your mother's estate.  I forward the enclosed to you since you are the client.").  See also Letter of Attorney Dolin to Attorney Chubrich dated June 24, 1997 ("Please do not submit to the Court at this time any request for allowance or payment of [the Dolin defendants'] legal fees. . . . We were engaged by Mark Kellett and have always proceeded on the basis that he is responsible for payment of our fees.  Whether he is entitled to reimbursement

15

from the general assets of the Estate, we leave it up to you,
[Attorney] Bob Donovan, and/or the Court, to advise.").

The fact that Kellett might, under applicable law, be
authorized to seek reimbursement from the estate for some of his
legal expenses does not alter the fact that the Dolin defendants
did not bill the estate for any legal services they provided.
Moreover, the fact that copies of their bills were provided to
the estate's counsel (at his request and, presumably, so that he
might determine whether, if the estate reimbursed Kellett for
legal fees billed to him by the Dolin defendants, it could then
claim those expenses as legitimate deductions on its tax
return) adds little to plaintiffs' claim that defendants "billed"
the estate.[3]

---

[3]   The extent of plaintiffs' confusion concerning the
legal obligations of the Dolin defendants is illustrated
throughout their memorandum in opposition to the motion to
dismiss.  For example, plaintiffs allege that, "[Attorney]
Dolin's active steps against the interests of the New Hampshire
Estate and/or the Plaintiffs, to whom he had a fiduciary duty,
constitute a breach of his duty to the estate and its heirs,
which injury impacts the New Hampshire Estate and Plaintiffs."
Plaintiffs' memorandum at 5, para. 6 (emphasis supplied).
Plaintiffs have, however, submitted no records or other evidence
which support their claim that Attorney Dolin, the other members
of his firm, or the firm itself assumed any fiduciary obligations
to the estate or undertook to represent the interests of the
estate or any of the plaintiffs themselves.  Instead, the record
supports defendants' assertion that Attorney Dolin was retained
solely to advise Mark Kellett as to: (1) potential personal tax
and legal consequences of various distributions to him from the
estate; and, to a more limited extent, (2) his various
obligations to the estate, as one of its co-executors (with the
caveat that none of the Dolin defendants was licensed to practice
in New Hampshire and, ultimately, that Kellett should retain
local counsel (as he did) to advise him as to those matters).

While it is remotely conceivable that a colorable argument

16

C.  Oral Representations Causing Mark Kellett to Breach His Alleged Oral Contract with Raymond Kellett.

Next, plaintiffs claim that by allegedly advising their client, Mark Kellett, to breach the terms of an oral agreement regarding disposition of the disputed savings bonds, the Dolin defendants "induced" Kellett to embark upon conduct which, in turn, caused harm to plaintiffs in New Hampshire. They have, however, failed to show how such conduct might conceivably constitute "purposeful availment" nor have they demonstrated that, by engaging in such alleged conduct, the Dolin defendants should reasonably have anticipated being haled into a New Hampshire court to answer for their actions.

Alternatively, plaintiffs seem to suggest that the Dolin defendants wrongfully induced them to rely (to their detriment) upon certain misrepresentations that the Dolin defendants allegedly made with regard to the disposition of the savings bonds. Importantly, however, plaintiffs do not claim that the Dolin defendants were parties to the alleged oral contract between defendant Mark Kellett and plaintiff Raymond Kellett (thus, they would appear to have no breach of contract claim

_____

could be made to the effect that, under New Hampshire law, defendants assumed some actionable duties to the estate or its beneficiaries when they provided personal legal counsel to one of the estate co-executors, see, e.g., Spherex, Inc. v. Alexander Grant & Co., 122 N.H. 898 (1982); Simpson v. Calivas, 139 N.H. 1 (1994); Hungerford v. Jones, ___ N.H. ___, 722 A.2d 478 (1998), plaintiffs have failed to advance such a claim. In any event, the current record provides no support for it, and New Hampshire law does not currently recognize any such duty.

17

against the Dolin defendants regarding the oral contract and, in fact, no such claim has been pled).  See Complaint.  See also Letter of Attorney Chubrich dated March 24, 1997 (expressing his understanding, as one of the parties to the telephone conference, that the alleged oral contract "had been reached between the Co-Executors" and, at least implicitly, that the Dolin defendants were not parties to that contract).[4]

Rather than allege that the Dolin defendants breached the terms of the oral contract, plaintiffs simply suggest that the Dolin defendants "induced" them to transfer the savings bonds to New York.  Plaintiffs say that it was Kellett who, in turn, breached the alleged oral agreement by instructing his attorneys, the Dolin defendants, to retain the bonds in their custody until the parties' ongoing disputes had been resolved.  Accordingly, plaintiffs suggest that the Dolin defendants agreed (at least implicitly) to become escrow agents or bailees of the disputed savings bonds.

Even crediting plaintiffs' allegations and assuming that the Dolin defendants agreed to become either an escrow agent or

---

[4]     To be sure, plaintiffs do assert a breach of contract claim against the Dolin defendants.  They do not, however, say that the Dolin defendants breached the terms of the alleged oral contract regarding disposition of the disputed savings bonds. Instead, they claim to be the third-party beneficiaries of the contract between defendant Mark Kellett and his attorneys, the Dolin defendants.  Thus, plaintiffs say that by negligently advising their client, the Dolin defendants caused plaintiffs to suffer actionable injuries.  See Complaint, Count 12.

18

bailee of the savings bonds, their breach of any duty while acting in such a capacity occurred in New York. And, any claim for damages resulting from such an alleged breach would seemingly lie either with Mark Kellett (their client), Raymond Kellett (as co-executor, and not individually) or, perhaps, the estate itself. At a minimum, however, plaintiffs have failed to demonstrate how the Dolin defendants assumed and then breached any duty owed to them in their individual capacities, as beneficiaries of the estate. And, more importantly, plaintiffs have failed to provide any legal support for their assertion that such conduct (all of which occurred in New York), vests this court with personal jurisdiction over the Dolin defendants.[5]

D.    Alleged "Conversion" of New Hampshire Property.

Finally, plaintiffs assert that by allegedly advising their client to breach the terms of an oral contract (regarding disposition of the savings bonds), and by retaining custody of the disputed bonds (pursuant to the instructions of their client, one of the estate's co-executors, who presumably had the authority to obtain, possess, and dispose of those estate assets), the Dolin defendants "converted" property of the estate. That conversion, plaintiffs say, caused harm which was felt in

_____

    [5]    In the absence of any cognizable legal duty flowing from the Dolin defendants to plaintiffs, plaintiffs cannot rely on Phelps v. Kingston, supra, for the proposition that a breach of a professional duty committed in a foreign jurisdiction, but which caused injuries that were foreseeable and felt in this jurisdiction, is a factor counseling in favor of the exercise of personal jurisdiction over defendants.

19

New Hampshire, thereby vesting this court with personal jurisdiction over the parties allegedly responsible for causing that harm.

Again, plaintiffs seem to allude to propositions of law articulated by the New Hampshire Supreme Court in Phelps v. Kingston, supra, and suggest that whenever a party acts in a manner that causes injury to a party in New Hampshire, the alleged tortfeasor is subject to the personal jurisdiction of a New Hampshire court. As the New Hampshire Supreme Court has made clear, however, "[In Phelps,] we were careful to emphasize that we did not hold that the defendant's negligent conduct by itself could confer jurisdiction [simply] because the plaintiff was a New Hampshire resident." Mosier, 142 N.H. at 423. Plainly, a defendant must do more than merely cause injury to a New Hampshire resident in order to be subject to personal jurisdiction of courts in this forum.

Finally, to the extent that the Dolin defendants actually "converted" property of the estate, any such conversion occurred in New York.[6] And, plaintiffs have failed to carry their burden of demonstrating how the alleged "conversion" of the savings

_____

[6] As with several other causes of action asserted by plaintiffs, it is entirely unclear whether plaintiffs, appearing in their individual capacities, have any viable claim for conversion. Instead, to the extent that assets of the estate were wrongfully converted, the estate (or, perhaps, its co-executors, appearing in that capacity) would seem to be the proper party to such a claim.

20

bonds constitutes "purposeful availment" or otherwise subjects the Dolin defendants to the exercise of personal jurisdiction by a court in this forum. Merely claiming that they, as beneficiaries of the estate, indirectly felt some impact in New Hampshire from defendants' allegedly wrongful conduct in New York, is insufficient to vest this court with personal jurisdiction over those defendants. See Mosier v. Kinley, 142 N.H. 415 (1997).

**Conclusion**

Plaintiffs' pleadings and papers seem almost crafted to confuse the pertinent facts and issues. The court has done its best to sort out and understand just what it is they are asserting and arguing, but it has not been easy. More time and effort is not warranted. The bottom line is this: as the parties asserting personal jurisdiction over the Dolin defendants, plaintiffs bear the burden of establishing the existence of such jurisdiction. They have failed to carry that burden. They have not shown that any of the three factors identified by the Court of Appeals in United Elec. Workers counsels in favor of the exercise of specific personal jurisdiction over the Dolin defendants.

At best, plaintiffs' assertion that this litigation arises out of the Dolin defendants' forum-state contacts is tenuous. See, e.g., Sawtelle, 70 F.3d at 1390-91. As to their claim that

21

the Dolin defendants "purposefully availed" themselves of the privilege of conducting business in New Hampshire, plaintiffs' legal argument is entirely unpersuasive and the jurisdictional facts pled are not supportive.  As noted by the Court of Appeals for the Seventh Circuit, "[p]ersonal jurisdiction over nonresidents of a state is a quid pro quo that consists of the state's extending protection or other services to the nonresident, a feature lacking here."  Cote v. Wadel, 796 F.2d 981, 984 (7th Cir. 1986).  Finally, while some of the so-called "Gestalt Factors" might arguably weigh in favor of the exercise of personal jurisdiction over the Dolin defendants (e.g., plaintiffs' interest in obtaining convenient and effective relief – though even the weight of that factor is called into question insofar as plaintiffs are residents of the State of Florida), on balance, consideration of those factors also counsels in favor of declining to exercise personal jurisdiction (e.g., the burden imposed upon defendants by requiring them to appear in this forum, competing interests in the place of adjudication, and this forum's adjudicatory interest in resolving the parties'

22

disputes[7]).  See generally Donatelli v. National Hockey League, 893 F.2d 459 (1st Cir. 1990).

Aside from the fact that plaintiffs would obviously prefer to litigate their claims against the Dolin defendants in this forum (in which plaintiffs were once residents), few, if any, factors support the exercise of personal jurisdiction over the Dolin defendants.  Accordingly, the court concludes that the Dolin defendants' conduct did not bear such a "substantial connection with the forum state" that they "should reasonably [have] anticipate[d] being haled into court [here]."  Burger King, 471 U.S. at 473-75.  Nor have plaintiffs shown that the Dolin defendants have sufficient "minimum contacts with [this forum] such that the maintenance of the suit [would] not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales, 466 U.S. at 414.

For the foregoing reasons, the court holds that plaintiffs have failed to make a prima facie showing that the court may properly exercise personal jurisdiction over the Dolin

---

[7]     While presumably a typographical error, a statement in plaintiffs' objection concerning the Gestalt factors is not far off the mark: "New Hampshire's interest in adjudicating the dispute cannot be understated."  Plaintiffs' objection (document no. 8) at 14.  None of the parties to this litigation is currently a New Hampshire resident, the claims against the Dolin defendants all relate to conduct which occurred outside of this jurisdiction, and the Dolin defendants have had, at best, extraordinarily limited and incidental contacts with this forum which fall well short of rising to the level of "purposeful availment."

defendants.  Accordingly, the Dolin defendants' motion to dismiss (document no. 7) is granted.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 28, 1999

cc:  Rosemary A. Macero, Esq.
     Robert E. Murphy, Jr., Esq.
     Jane H. Davison, Esq.